## In re DELGADO, Petitioner.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

No. 1648. Argued April 22, 1891. — Decided May 25, 1891.

A statute providing that "for the purpose of hearing application for and issuing writs of *mandamus*," the court "shall be regarded as open at all times" authorizes a hearing on the return of the alternative writ, and the issue of a peremptory writ in vacation.

A statute limiting the fine to be imposed for violation of a peremptory writ of *mandamus*, and providing that, when paid, it shall be a bar to an action for any penalty incurred by reason of refusal or neglect to perform the duty, does not deprive the court of power to punish for disobedience of the writ, or to compel obedience by imprisonment.

In case of a disputed election to a municipal office, *mandamus* may issue to compel the recognition of the *de facto* officer until the rights of the parties can be determined on *quo warranto*.

THE case is stated in the opinion.

*Mr. William M. Springer* and *Mr. Thomas Smith* for petitioner. *Mr. C. H. Gildersleeve* was also on the brief.

*Mr. John H. Knaebal* opposing. *Mr. E. L. Bartlett*, Solicitor General of New Mexico, was also on the brief.

MR. JUSTICE BREWER delivered the opinion of the court.

On the 13th of January, 1891, Abraham Staab, William H. Nesbitt and Juan Garcia filed in the District Court of the First Judicial District of the Territory of New Mexico, and presented to the judge thereof, their petition, in which they set forth certain facts, showing, as they claimed, that they had been elected, at the general election in November preceding, members of the board of county commissioners of Santa Fé County, in the Territory of New Mexico; and further alleged that on the 2d day of January, 1891, they had duly qualified as such commissioners; that at the same election Pedro Del-

gado had been duly elected probate clerk of said county, and had qualified as such officer; that by virtue thereof he became and was the acting clerk of the board of county commissioners, and had possession of the records, books, files and papers of that office; that after their qualification as such board they demanded of him to produce the books, and to record their proceedings as such board; and that he refused so to do or to in any manner recognize them as the board of county commissioners. They prayed that a writ of mandamus might issue, commanding him to recognize them as the board of county commissioners; that he act with them as such board; and that he enter of record their proceedings as a board. Upon this petition an alternative writ was issued; and on the 15th day of January, in obedience to such writ, appellant appeared and filed his answer, alleging facts, which, as he claimed, showed that three other persons were at the November election elected county commissioners, and that the petitioners were not; and further averring that two of those other persons, on the 1st of January, 1891, duly qualified as members of the board of county commissioners, entered into possession and assumed the duties of such office, met on that day in the court-house of the county as the board of county commissioners, and proceeded to transact the business of the county; and that they were still in possession of their offices of county commissioners. He admitted that he refused to recognize the petitioners as a board of county commissioners, and alleged as his reason therefor that they were not the legally elected commissioners, and had never been in possession of such offices. On the same day, January 15, the matter came on to be heard on these pleadings, and a peremptory mandamus was ordered, commanding the appellant that he record on the records of the county the proceedings of the petitioners as the board of county commissioners of the county; and that in all things he recognize them as the only lawful county commissioners of the county. Disobeying the peremptory writ, he was brought up on an attachment for contempt, and committed to jail until he should purge himself thereof by obeying the writ. Instead of taking steps to review this judgment directly, by proceedings in error

in the Supreme Court of the Territory, appellant, on the 23d of January, filed in that court a petition for a writ of *habeas corpus*. On January 31 a hearing was had thereon, and it was denied; from which judgment this appeal has been taken to this court.

The attack upon the contempt proceedings is in a collateral way by *habeas corpus*, and the inquiry is one of jurisdiction. *Ex parte Watkins*, 3 Pet. 193, 203; *Ex parte Parks*, 93 U. S. 18; *Ex parte Yarbrough*, 110 U. S. 651; *Cuddy, Petitioner*, 131 U. S. 280, 285, 286; *In re Wilson*, ante, 575. In *Ex parte* *Yarbrough* one question was as to the conformity of the indictment to the provisions of the statute; and it was held that it " cannot be looked into on a writ of *habeas corpus* limited to an inquiry into the existence of jurisdiction on the part of that court."

This narrows the range of inquiry. It is objected that the peremptory writ was void, because ordered in vacation by the judge, and not after trial before a jury, in the court, in term time. Section 2005, Comp. Laws of the Territory, provides: " For the purpose of hearing application for and issuing writs of mandamus the District Court shall be regarded as open at all times wherever the judge of such court may be within the Territory." This section gives full authority for these proceedings. The original application was entitled " in the court," though addressed to the judge, as was proper. The hearing and judgment were by the court, and the peremptory mandamus was issued by direction of the court; and the power of the legislature to provide that the court shall always be open for certain purposes, cannot be doubted. A somewhat similar provision has been made for the Circuit Courts of the United States in respect to the supervision of elections. Rev. Stat. section 2013. While no jury was had, apparently, none was demanded; and the determination of the facts by a j ry in a mandamus case is not a necessary preliminary to a valid judgment.

Again, it is objected that the punishment is different from that permissible in cases of mandamus, and section 2002 of the Compiled Laws is cited. That reads as follows: " Whenever

a peremptory mandamus is directed to a public officer, body or board, commanding the performance of any public duty specially enjoined by law, if it appears to the court that such officer or any member of such body or board, without just excuse, refuses or neglects to perform the duty so enjoined, the court may impose a fine not exceeding $250, upon every such officer or member of such body or board; such fine, when collected, shall be paid into the Territorial treasury, and the payment of such fine is a bar to an action for any penalty incurred by such officer, or member of such body or board, by reason of his refusal or neglect to perform the duty so enjoined." But that section provides for the wrong done by the party, in failing to discharge the duty imposed; and does not exclude the power of the court to punish for disobedience of the writ, or to compel obedience to the writ by imprisonment until compliance. The section quoted was taken from the legislation of the State of New York, 2 N. Y. Rev. Stat. 587, section 60; and the scope of that section was considered by the New York Court of Appeals in *People ex rel.* v. *Railroad Company*, 76 N. Y. 294. In that case the court thus interpreted the section: "We do not think that this provision was intended to prescribe the punishment for disobeying the writ, but that its object was to authorize the court to whom application should be made for a writ of mandamus against a public officer, body or board, to compel the performance of a public duty specially enjoined by law, to impose a fine upon the officer, etc., for past neglect of the duty, in addition to awarding a peremptory mandamus compelling its performance, providing no just excuse is shown for such past neglect. This power of the court granting the mandamus, to fine for past neglect, was intended to obviate the necessity of a criminal prosecution under the statute which constitutes such neglect a misdemeanor, and to enable the court awarding the mandamus to dispose of the whole matter in one proceeding. The offence for which the fine is authorized to be imposed, is not disobedience of the writ, but the unexcused neglect of duty of which the officer was guilty before the writ issued and which rendered the application necessary, and the fine may be imposed

at the time of issuing the peremptory writ. This is the clear import of the language of the section, and in the revisers' notes it is stated to be a new provision, intended for the purpose above indicated."

This brings us to the principal question in the case; and that is, that the real import of this proceeding was to try the title to office; that *quo warranto* is a plain, speedy and adequate, as well as the recognized remedy for trying the title to office; and that the familiar law in respect to mandamus, reinforced by statutory provisions in New Mexico, is that mandamus shall not issue in any case where there is a plain, speedy and adequate remedy at law. On this, the invalidity of the proceedings is asserted. But the obvious reply is, that this was not a proceeding to try the title to office. The direct purpose and object was to compel the defendant to discharge his duties as clerk, and to forbid him to assume to determine any contest between rival commissioners. It was enough in this case for the court to determine, and it must be assumed that the evidence placed before it was sufficient to authorize an adjudication, that the petitioners were commissioners *de facto*. As such, the clerk was bound to obey their commands and record their proceedings. It is true, the pleadings disclose the existence of a contest between these petitioners and other parties, and it is true that the answer would tend to show that the others were the commissioners *de facto;* but that was a question of fact to be determined by the court hearing this application, and it, as must be assumed from the decision, found that these petitioners rather than their contestants were the commissioners *de facto.* It was proper for it then to issue a mandamus to compel the defendant to recognize them as the commissioners of the county, and this, irrespective of the question whether or no the petitioners were also commissioners *de jure.* No one would for a moment contend that this adjudication could be pleaded as an estoppel in *quo warranto* proceedings between the several contestants. If that has not already been determined in a suit to which all the contestants are parties, it is still a matter open for judicial inquiry and determination. Who would doubt, if these petitioners were

the unquestioned commissioners of the county that mandamus would lie to compel the clerk to recognize them, and record on the county books their proceedings as such? Does the fact that certain parties are contesting their rights as commissioners oust the court of jurisdiction, or forbid it to compel other county officers to recognize them? Must the office of county commissioners remain practically vacant, and the affairs of the county unadministered, pending a trial: of a right of office between contestants? Surely not; public interests forbid. They require that the office should be filled; and that when filled by parties under color of right, all other officers should recognize them as commissioners until their right to hold the office has been judicially determined adversely by proper *quo warranto* proceedings. It would be strange indeed if, when their title and possession of the office were unquestioned, the court had undoubted jurisdiction by mandamus to compel the clerk of the board to record their proceedings, and recognize them as officers, its jurisdiction to act was lost by a mere pleading on the part of the delinquent clerk asserting that some other parties were the rightful commissioners. This is not a suit by one party claiming to be clerk of the board, to compel by mandamus another party also claiming to be clerk of the board to transfer to him the records and papers of the office ; nor by certain parties claiming to be commissioners, to compel other parties also claiming to be commissioners to surrender the office, and desist from interference with its duties; but it is a suit by certain parties showing themselves to be *de facto* commissioners, to compel the clerk of that board to respect their possession of the office, discharge his duties as clerk to the acting board, and not assume to himself judicial functions, and adjudicate against the validity of their title. The case of *Putnam* v. *Langley*, 133 Mass. 204, is in point. Plaintiff there claimed to have been elected one of the board of water commissioners of the town of Danvers. One Josiah Ross also claimed to have been elected, and there was a matter of disputed title between plaintiff and Ross. Langley and Richards were the other commissioners, whose title was apparently undisputed. It was held that mandamus was a proper

remedy to compel Langley and Richards to recognize, receive and act with the plaintiff as a member of the board. As sustaining the views we have expressed, though not exactly in point, see also *Rex v. Harris*, 3 Burrow, 1420; *Page v. Hardin*, 8 B. Mon. 648; *State v. Mayor*, 23 Vroom, (54 N. J. Law,) 332; *Williams v. Clayton*, Supreme Court of Utah, 21 Pac. Rep. 398.

Our conclusion, therefore, is that the District Court had jurisdiction, and that the merits of the controversy cannot be inquired into collaterally in this way. The judgment of the Supreme Court of the Territory of New Mexico is

*Affirmed.*

MR. JUSTICE BRADLEY was not present at the argument and took no part in the decision of this case.