## MATNEY v. KING, *Judge.*

### No. 6.   Decided Januarv 9, 1908.

#### (93 Pac. 737.)

1. **CLERKS OF COURTS—Recognition by Court.** The clerk of the district court is an officer of the court, and, in order to properly perform the duties devolving on him by law, it is the duty of the judge of the court to recognize him as such officer.

2. **SAME—Prima Facie Title—Mandamus.** The office of clerk of the district court, under the law, is to be filled by election, and the respondent had no authority to fill the office by appointment. One of the persons voted for at the election was entitled to be recognized by the respondent as clerk, and that one was the person holding the **prima facie** title to the office. When the respondent refused to recognize the person holding **prima facie** title, mandamus was the proper remedy to compel such recognition.

3. **SAME—Disputed Title to Office—Determination by Judge—Scope of Inquiry.** Quo Warranto is the proper method of determining disputed questions of title to public office, yet a mere groundless assumption of an election on the part of a person claiming title to public office, and the apparent exercise of the functions of the office de facto, will not deter the court, as a preliminary question, from examining the uncontroverted facts before it for the purpose of determining who has **prima facie** title, notwithstanding the person claiming adverse title may not be a party to the proceedings.

4. **SAME.** Where two persons claiming title to the office of clerk of the district court present their credentials on which they base their claim to the office to the judge of the district court, and each requests the judge to recognize him as such clerk, it is the duty of the judge to examine such credentials for the purpose of determining which one of the claimants holds the **prima facie** title to the office, and such examination does not constitute passing upon the title to public office.

5. **MANDAMUS—Title to Office—Color of Right.** Title to public office, based upon mistakes of fact or misconceptions of law, may impart a color of right which will bar the allowance of a mandamus; but palpable disregard of law renders the action whereby an office is seized merely colorable, and in a clear case will be brushed aside as affording no obstruction to the exercise of a plain legal duty.

(Syllabus by the Court.)

Application of Toney Matney for writ of mandamus to John H. King, judge of the district court of Muskogee county, to compel him to recognize relator as district clerk and to deliver to him the records of that office. Writ granted.

This matter was presented to the court upon the petition of the relator, the response of the respondent, and the agreed statement of facts, signed by counsel for the relator and respondent, respectively, all of which are hereafter set out in full in the above order:

## PETITION.

"Comes now the plaintiff, Toney Matney, and represents and shows to this court that at the general election held in the state of Oklahoma on the 17th day of September, 1907, he was duly and legally elected to the office of district clerk of the county of Muskogee, state of Oklahoma, having received a majority of the votes of said county cast at said election for said office, and that he has since received his certificate of election from the clerk of said county, and has taken the oath of office and given the bond as required by law; that on the 30th day of October, 1907, in a mandamus proceeding in the United States court for the Western District of the Indian Territory at Muskogee, in which Carroll Bucher *et al.* were plaintiffs and the county commissioners of said county of Muskogee were defendants, which was a proceeding to require said defendants as such commissioners to canvass the vote of said county for all the county offices of said county, said court rendered judgment against said plaintiffs and in favor of said defendants by then and there discharging the rule and dismissing said cause upon said defendants' response in obedience to the terms of the alternate writ of mandamus issued by said court, in which response said defendants stated that they had canvassed the vote of said county; that said commissioners found by canvassing the vote of said county that your petitioner had been duly elected to the office of district clerk of said county, and that the certificate issued by the clerk of said county to your petitioner was in obedience to the canvass of said commissioners; that there has been no appeal taken from the judgment of said court; that said court had jurisdiction to determine the question of the petitioner's right to said office, and that said judgment was in favor of your petitioner; that after having qualified as required by law,

and as above stated, to wit, on the 18th day of November, 1907, your petitioner entered upon the discharge of the duties of his office as such district clerk, and has remained in the active discharge of said duties up to this time; that the records belonging to his office as district clerk of said county are in the control and custody of John H. King, judge of the Third judicial district of the state of Oklahoma, which district is composed of the counties of Muskogee and Wagoner in said state; that on the 21st day of November, 1907, your petitioner presented to the said John H. King, sitting as a court at Muskogee in said county, his petition in writing, stating that he was the duly elected clerk of said court; that he had qualified as such and requested said court to turn over to him as such clerk the records and papers which properly belong to him as clerk of said court. And he further states that said court refused to recognize your petitioner as said clerk, and refused to turn over to him any of the papers or records which, belonged to him as clerk of said court; that the said Carroll S. Bucher has no legal right to hold said office, and is a usurper. The plaintiff further states that he is remediless in the premises, by or through ordinary process or proceedings at law, and he therefore prays this honorable court to award against the said district court a writ of mandamus, commanding and requiring it to recognize your petitioner as the district clerk of said court, and to vacate all orders heretofore made inconsistent therewith, and to turn over to your petitioner all papers and records which legally belong to him, and for such other process and orders and remedies as may to the court seem meet.

"J. E. WYAND,
"THOS. H. OWEN,
"BAKER & PURSEL,
"Attorneys for Petitioner.

"State of Oklahoma, County of Muskogee, ss.:

"Toney Matney, of lawful age, being duly sworn, says that he is the plaintiff above named; that he has read the foregoing petition, and knows the contents thereof; and that the facts therein set forth are true.

"TONEY MATNEY.

"Subscribed and sworn to before me this 23rd day of November, A. D. 1907.

" E. A. EKER, Notary Public.
"My commission expires June 22, 1910."

Response of Defendant to Plaintiff's Petition.

"Comes now the respondent, John H. King, judge of the Third judicial district for the state of Oklahoma, composed of the counties of Muskogee and Wagoner, by and through his counsel George S. Ramsey, and for answer to the plaintiff's petition for a writ of mandamus in this case says that he neither denies nor admits that the petitioner, Toney Matney, was duly and legally elected to the office of district clerk of the county of Muskogee, state of Oklahoma, on the 17th day of September, 1907, but he states in response to this allegation by the petitioner that said Toney Matney was a candidate before the people at said election for the office of clerk of the district court of said county of Muskogee on the Democratic ticket, and that Carroll S. Bucher was a candidate for the office of district clerk in and for the said county of Muskogee at said election held on September 17, 1907; and this respondent further states in this connection that both said Toney Matney, the petitioner, and said Carroll S. Bucher, claim to be clerk of the district court in and for Muskogee county by the result of the said election held on September 17, 1907. In so far as this respondent is concerned it is of no importance to respondent as to which of said candidates, that is, Toney Matney or Carroll S. Bucher, was elected to the office of district clerk at said election; but this respondent here states that he has a well-founded opinion as to which of the two said candidates was elected to said office, and that this opinion disqualifies him from hearing and adjudicating any contest by either of said applicants in a suit to try the title to said office.

"Respondent states that on November 21, 1907, under the order of this court he convened the district court at Muskogee in and for Muskogee county, as judge of the Third judicial district of the state of Oklahoma, and was confronted by contending candidates for each county office in the county of Muskogee. Respondent states that it seems to be the impression of all the candidates and claimants for county offices in the county of Muskogee that he possessed, as judge of said judicial district, authority to determine, upon convening his court, who were entitled to each county office in Muskogee county, and that each claimant for county office in Muskogee county presented to him, upon the opening of his court, certificates of election, and asked that he recognize them as county officials. Respondent states that upon said date, that is, November 21, 1907, Carroll S. Bucher presented to

him a certificate of election, dated November 8, 1907, and signed by Frank R. Applegate as county clerk of the proposed county of Muskogee, in the proposed state of Oklahoma, a copy of which certificate of election is hereto attached and marked 'Exhibit No. 1,' to this response, and made a part hereof. Respondent also states that the petitioner, Toney Matney, presented to him upon said November 21st a certificate of election, dated October 30, 1907, and signed by Porter Spaulding as county clerk, Muskogee county, in the proposed state of Oklahoma, a copy of which certificate your respondent cannot furnish.

"Your respondent also states in this connection that Fred Cook presented on that occasion a certificate of election, dated November 8, 1907, and signed by Frank R. Applegate as county clerk of the proposed county of Muskogee, in the proposed state of Oklahoma, certifying that said Fred Cook had been elected to the office of sheriff in and for Muskogee county at the election held on September 17, 1907, said certificate being filed herewith as Exhibit No. 2. Respondent also states in this connection that Remus B. Ramsey presented on that date a certificate of election, dated October 30, 1907, and signed by Porter Spaulding as county clerk of Muskogee county, in the proposed state of Oklahoma, certifying that said Remus B. Ramsey had been elected sheriff in and for Muskogee county at said election. Respondent also states that Alexander Richmond on said date presented to him a certificate of election, dated November 8, 1907, and signed by Frank R. Applegate, county clerk of the proposed county of Muskogee, in the proposed state of Oklahoma, certifying that Alexander Richmond was elected county judge in and for the said county of Muskogee at the election held on November 17, 1907. Respondent also states that on the same date W. C. Jackson presented a certificate of election, dated October 30, 1907, and signed by Porter Spaulding as county clerk of Muskogee county, in the proposed state of Oklahoma, certifying that said W. C. Jackson was elected county judge in and for Muskogee county at said election, a copy of which certificate is hereto attached, marked 'Exhibit No. 3,' and made a part of this response. Respondent also states that on said date, November 21, 1907, W. F. Rampendahl presented to him a certificate of election, dated November 8, 1907, and signed by Frank R. Applegate as county clerk of the proposed county of Muskogee, in the proposed state of Oklahoma, certifying that said W. F. Rampendahl had been elected county attorney in and for said

county of Muskogee at the said election held September 17, 1907. Respondent also states that on said date, November 21st, W. J. Crump presented a certificate of election, dated October 30, 1907, signed by Porter Spaulding as county clerk, Muskogee county, in the proposed state of Oklahoma, certifying that said W. J. Crump was elected county attorney in and for said county of Muskogee at said election on the 17th of September, 1907, a copy of which certificate of election is hereto filed as Exhibit No. 4 to this response, and made a part hereof.

"Your respondent further states that there was upon that occasion presented to him certificates of election by adverse claimants for each county office in the county of Muskogee, none of which he received and acted upon, except for district clerk, sheriff, county judge, and county attorney. Your respondent states that it was necessary for him to convene the district court in Muskogee county; that the public welfare required the organization of his court; that in order to organize his court it was necessary for him to have a clerk, for him to recognize some one as sheriff, some one as county attorney, and some one as county judge, each of these offices, as above shown, were claimed by two parties under certificates of election in due form. Your respondent states that he was then of the opinion and is now of the opinion that he had no power to judicially determine who the rightful claimants to any of the said county offices were and are, but that from necessity it was required of him that he recognize some one as such official in each case, that is, for district clerk, for sheriff, for county attorney, and for county judge. Your respondent then made and filed an order recognizing as district clerk Carroll S. Bucher, as sheriff Fred Cook, as county attorney W. J. Crump, and as county judge W. C. Jackson.

"Your respondent states that the Republican candidates for county offices had each a certificte of election, and the Democratic candidates for county offices had each a certificate of election, and not desiring to appear partisan in his action this respondent made an order recognizing two Republican claimants and two Democratic claimants. A copy of said order of the court, signed and entered, is herewith filed as Exhibit No. 4 to .this response, and made a part hereof. Your respondent at the time he organized his court did not have in his possession any of the records of the United States Court for the Western District of the Indian Territory at Muskogee, and could not, and did not,

take judicial notice of any proceedings had in said United States Court at its October term, 1907, in regard to the mandamus proceedings alleged in the plaintiff's petition filed in this case. Your respondent admits that a mandamus proceeding was had in the United States Court for the Western District of the Indian Territory, in which Carroll S. Bucher was plaintiff and the county commissioners of the county of Muskogee were defendants; said proceedings being instituted for the purpose of compelling said county commissioners to canvass the vote of said county for county officers. Your respondent states that upon an examination of the record in that proceeding he finds it difficult to tell what was done or what was accomplished, but he admits that J. E. Wyand and William Noel filed on October 30, 1907, a response, being one among many responses, wherein they stated that they had canvassed the votes and determined the persons who had received the greatest number of votes in Muskogee county for the several county and township offices, and that such findings were reduced to writing, signed by the commissioners, and the work of said commissioners entirely completed, and the board adjourned on October 29, 1907, *sine die*. Said J. E. Wyand and William Noel in this report stated that they had not delivered to the several candidates who received the greater number of votes for the county and township offices any certificates of election, because they were not authorized by law to do so, such power being lodged exclusively in the county clerk. A copy of said response is herewith filed as Exhibit No. 5 to this response, and made a part thereof. On October 31, 1907, the records of the United States Court for the Western District of Indian Territory, at Muskogee, show in that case that upon the response signed by J. E. Wyand and William Noel, as shown by Exhibit No. 5 to this response, the rule was discharged by the court and the proceedings dismissed.

"Respondent states further that during the mandamus proceedings had in the United States court heretofore referred to it was judicially determined by decree of the court, made on October 16, 1907, and accordingly entered, that on the 25th day of September, 1907, J. E. Wyand, J. W. Brady, and William Noel were the legal county commissioners of the proposed county of Muskogee, a copy of which judgment as entered is herewith filed as Exhibit No. 6, and made a part of this response. Your respondent further states that Carroll S. Bucher, claimant to office of district clerk, and Fred Cook, as claimant to office of sheriff,

contend and allege that on October 9, 1907, J. W. Brady and William Noel, under the provisions of section 16 of the election ordinance made by the constitutional convention, removed Porter Spaulding as county clerk for having failed and refused to do his duty under said election ordinance, and appointed Frank R. Applegate to the position of county clerk. A copy of said records of the county commissioners removing said Porter Spaulding is herewith filed as Exhibit No. 7, and made a part of this response. Respondent states that it is claimed that Frank R. Applegate was the legal county clerk in and for Muskogee county from October 9, 1907, up to the date of the statehood proclamation. Your respondent avers and pleads that said Frank R. Applegate acted as such county clerk and signed the commissions or certificates of election held by said Carroll S. Bucher and Fred Cook, as heretofore set out. Your respondent, therefore, denies that petitioner, Toney Matney, has received his certificate of election from the clerk of said county of Muskogee. Your respondent further states that both the plaintiff, Toney Matney, and Carroll S. Bucher, have claimed to be the district clerk for Muskogee county ever since statehood went into effect on November 16, 1907. Your respondent also states that both the plaintiff, Toney Matney, and the said Carroll S. Bucher, have not only each claimed to be district clerk, but have each undertaken to maintain offices as such district clerk, and each had held himself out to the world and to the public as such district clerk since statehood became effective.

"Your respondent avers and pleads that this is a proceeding to try the title to office, which cannot be tried by a mandamus proceeding. Your respondent states that since November 21, 1907, Carroll S. Bucher has been recognized by him as the district clerk, and has been discharging all the duties of such office, and is in possession and has custody of the records of the district court in and for Muskogee county. Your respondent avers and pleads that the plaintiff, Toney Matney, has a full, complete, and adequate remedy at law by a proceeding to try title to the office in the nature of a *quo warranta* proceeding. Respondent denies that the plaintiff is remediless in the premises by or through ordinary process or proceedings at law. Respondent, therefore, asks that the complaint be dismissed and the rule discharged.

"Geo. S. Ramsey,
"Attorney for Respondent.

"State of Oklahoma, Muskogee County—ss.:

"John H. King, being duly sworn, on oath, states that he has read over the above response to plaintiff's petition in the above-styled cause, and that the statements and allegations therein contained are true.

"JOHN H. KING.

"Subscribed and sworn to before me on this 28th day of November, 1907.

"[Seal.] EDWARD MERRICK, Notary Public.

"My commision expires, Nov. 5, 1911."

Exhibit No. 1.

"Certificate of Election. County of Muskogee, State of Oklahoma.

"To Carroll S. Bucher: This is to certify that at the election held in the proposed county of Muskogee, in the proposed state of Oklahoma, on the 17th day of September, A. D. 1907, for the election of officers for a full state and county government, including members of the Legislature and five representatives in Congress for the proposed state of Oklahoma, as provided by election ordinance passed April 22, A. D. 1907, and amended July 15, A. D. 1907, by the constitutional convention of said proposed state, you were duly and legally elected to the office of clerk of the district court in said proposed county of Muskogee, in said proposed state of Oklahoma, as appears from the canvass of the votes and the determination of the board of county commissioners for the proposed county of Muskogee, in the proposed state of Oklahoma, of said election now on file in the office of the county clerk of the proposed county of Muskogee, in the proposed state of Oklahoma.

"In witness whereof I have hereunto set my hand this 8th day of November, A. D. 1907.

"[Signed] FRANK R. APPLEGATE,

"County Clerk of the Proposed County of Muskogee, in the Proposed State of Oklahoma."

Exhibit No. 2.

"Certificate of Election. County of Muskogee, State of Oklahoma.

"To Fred Cook: This is to certify that at the election held in the proposed county of Muskogee, in the proposed state of Oklahoma, on the 17th day of September, A. D. 1907, for the election of officers for a full state and county government, including members of the Legislature and five representatives in Congress for

the proposed state of Oklahoma, as provided by election ordinance passed April 22, A. D. 1907, and amended July 15, A. D. 1907, by the constitutional convention of said proposed state, you were duly and legally elected to the office of sheriff in said proposed county of Muskogee, in said proposed state of Oklahoma, as appears from the canvass of the votes and the determination of the board of county commissioners for the proposed county of Muskogee, in the proposed state of Oklahoma, of said election now on file in the office of the county clerk of said proposed county of Muskogee, and the proposed state of Oklahoma.

"In witness whereof I have hereunto set my hand this 8th day of November, A. D. 1907.

"[Signed]             Frank R. Applegate,

"County Clerk of the Proposed County of Muskogee, in the Proposed State of Oklahoma."

Exhibit No. 5.

"Order.

"Whereas, there now exists in Muskogee county a deplorable and unfortunate condition of affairs in that there are two adverse claimants holding certificates of election for each county office; and

"Whereas, I, as the judge of the district court for the Third judicial district, including Muskogee and Wagoner counties, in the absence of a duly instituted contest over the respective offices, have no authority to judicially determine the rightful claimant to any of said county offices in Muskogee county; and

"Whereas, it is necessary for this court to have a clerk and that some one should perform the duties and functions of district clerk in Muskogee county; and

"Whereas, it is necessary and required by public necessity that this court recognize some one as sheriff of Muskogee county, by whom process may be served and the peace and quietude of the county maintained; and

"Whereas, public necessity requires that this court recognize some one as county attorney to perform the functions of that office, as required by law, and act as public prosecutor; and

"Whereas, the Constitution requires this court, as successor to the United States Court for the Western District of the Indian Territory, to turn over and transfer to the county court of this county all matters, proceedings, records, books, papers, and

documents appertaining to all causes or proceedings relating to estates; and

"Whereas, public necessity requires that this be done at once; and

"Whereas, in order to make such transfer necessity requires this court to recognize some one as judge of the county court of Muskogee county, into whose hands, as such official, such records should be placed:

"Now, therefore, it is ordered that Carroll S. Bucher be and is hereby recognized as the district clerk in and for Muskogee county, and as such district clerk he will file his certificate of election as such clerk and enter the same on the records of this court with attached thereto a certified copy of his bond and oath of office, and said Carroll S. Bucher will act as such district clerk for Muskogee county until otherwise ordered, and as such district clerk will take and retain custody of the records of this court and issue any and all process issuing from this court.

"It is further ordered that Fred Cook be, and is hereby, recognized by this court as the sheriff of Muskogee county, and said Fred Cook will file with the clerk of this court a certificate of his election as such sheriff, with attached thereto a certified copy of his bond and oath of office, which are hereby ordered spread upon the records of this court; and said Fred Cook will receive and serve all summonses and other process issued from this court, and perform any and all the duties of sheriff of Muskogee county in so far as this court is concerned until otherwise ordered.

"It is further ordered that W. J. Crump be, and is hereby, recognized as county attorney in and for Muskogee county, and said W. J. Crump will file with the clerk of this court his certificate of election, with a certified copy of his bond and official oath of office, which are hereby ordered entered upon the journal of this court; and said W. J. Crump will in all things as provided by law act as and perform the duties of county attorney for Muskogee county until otherwise ordered.

"It is further ordered that W. C. Jackson be, and is hereby, recognized as the county judge in and for Muskogee county, and is hereby ordered to file his certificate of election as such county judge, with attached thereto a certified copy of his official bond and oath of office, with the clerk of this court, and the same are ordered entered of record on the journal of this court; and it is hereby ordered and directed that all matters, proceedings, records,

books, papers, and documents appertaining to all causes or proceedings relating to estates be and the same are hereby transferred to the county court of Muskogee county, and the clerk of this court is hereby ordered and directed to turn over to W. C. Jackson as county judge in and for Muskogee county all said matters, proceedings, records, books, papers, and documents appertaining to all causes and proceedings relating to estates in this county obtained by this court from the recent clerk of the United States Court for the Western District of the Indian Territory at Muskogee.

"It is further ordered that all certificates of election be returned to the respective parties by the clerk of this court immediately upon their being entered upon the journal of this court, as directed in this order.

"[Signed]                          JOHN H. KING, Judge.

### Exhibit No. 6.

"In the United States Court of the Western Judicial District of Indian Territory, Sitting at Muskogee.

"Carroll S. Bucher, Relator, v. J. E. Wyand et al., Respondents. No. 7,909.   Mandamus.

"And now on this 16th day of October, A. D. 1907, the same being one of the judicial days of the October term of this court, the above-styled cause came on for hearing. The relator appears by G. W. Wheatly, Esq., Waldron & Cramer, and Dercos Bailey, Esq., his attorneys. The respondents J. W. Brady and William Noel appear by William F. Shuermeryer, Esq., their attorney; and, this cause having been heretofore heard upon the amended petition and responses thereunto hereinbefore filed together with the agreed statements of fact, the court had the matter under advisement, and finds as follows, viz.:   That on the 25th day of September, A. D. 1907, the said respondents J. E. Wyand and J. W. Brady and William Noel were the legal county commissioners of the proposed county of Muskogee, in the proposed state of Oklahoma, and authorized to canvass the votes cast in the said county of Muskogee, in the said state of Oklahoma, at the election held on the 17th day of September, A. D. 1907; that no legal canvass thereof had been had; and that it is the duty of the said J. E. Wyand, J. W. Brady, and William Noel, or their lawful successors in office, to at once proceed with the canvass of the returns of the said election in the said county, and cause to

be prepared and forwarded the proper abstracts and certificates of election to the persons found to be elected. Therefore it is ordered by the court that you, J. E. Wyand, and you, J. W. Brady and William Noel, or the duly commissioned and legally qualified successors of either of you, do forthwith proceed to canvass the returns of the votes cast at the election held in the proposed county of Muskogee, in the proposed state of Oklahoma, on the 17th day of September, A. D. 1907, and do promptly certify the result of said canvass, as required by law, by causing to be forwarded to Charles H. Filson, secretary of the territory of Oklahoma, an abstract showing the total number of votes cast at said election, and abstract showing the total number of votes cast in the said county for each of the candidates for the various state offices, for congressman of the Third and Fourth congressional district, for judge of the Third judicial district, and for members of the Legislature of the proposed state of Oklahoma; also that you canvass the returns of votes cast for candidates for the various county and township offices, and cause to be prepared and delivered to each candidate found to have the highest number of votes a proper certificate of his office, and that you thereafter make due and proper return of your compliance with this order. Also it is further ordered that the county clerk of the said county of Muskogee, of the proposed state of Oklahoma, do expose the returns of said election unto the said county commissioners for canvass. To all of which the respondent, J. E. Wyand, excepted, and exception is noted.

"[Signed]            WM. R. LAWRENCE, Judge."

Exhibit No. 7.

"Minutes of Meeting of County Commissioners of Muskogee County.

"Commissioners J. W. Brady and William Noel met in the city of Muskogee on October 9, 1907, J. E. Wyand being absent, and the said J. W. Brady and William Noel being the majority of said board, did proceed to organize by electing William Noel chairman and J. W. Brady temporary clerk, Porter Spaulding not being present. And it appearing from the statement of Charles McLees, deputy United States marshal, who had the writ of mandamus, that the said Porter Spaulding, county clerk, was out of the jurisdiction of the officers, and further that on the 8th day of October, 1907, after the order of the United States court was

made to the county clerk, and J. E. Wyand, commissioner, canvassed the votes of Muskogee county, the two commissioners, J. W. Brady and William Noel, went to the office of Clerk Spaulding, at room 5 in the Madden Building, of the City of Muskogee, and same was locked up and closed, and further that on a previous occasion, to wit, on the 24th day and 25th day of September, 1907, these two commissioners, J. W. Brady and William Noel, while at the office of County Clerk Spaulding in the said Madden Building, demanded of him that he turn over the election returns of the general election held on the 17th day of September, 1907, in the proposed county of Muskogee, for the proposed state of Oklahoma, for the purpose of canvassing the same, and the said Porter Spaulding refused to turn over or expose said returns for canvass, and it appearing that under section 16 of the election ordinance passed by the constitutional convention of the proposed state of Oklahoma, that the county commissioners have power and it is their duty to remove the county clerk when he fails and refuses to do his duty, and the said Porter Spaulding, county clerk, having failed and refused to do his duty under the said election ordinance, he, the said Porter Spaulding, is hereby removed from the office of county clerk by virtue of the power vested in us, and Frank R. Applegate, a duly qualified elector, and qualified to hold the position of county clerk, is hereby appointed county clerk of the proposed county of Muskogee, proposed state of Oklahoma, to take place of the said Porter Spaulding, and the bond is hereby fixed in the sum of $5,000. No other business coming before the board at this meeting, the meeting is adjourned subject to the call of the chairman."

Exhibit No. 5.

"In the United States Court for the Western District of the Indian Territory, at Muskogee.

"Carroll S. Bucher, Relator, v. J. E. Wyand *et al.*, County Commissioners *et al.*, Defendants.   No. 7,909.

"Come now J. E. Wyand and William Noel, and for their answer to the notice served on them on the evening of the 29th of October, 1907, alleging that the board of county commissioners of the proposed county of Muskogee had unlawfully failed and refused to canvass the election returns from precinct No. 2 of township No. 1, polling place Yahola, and from precinct No. 1 of township No. 5, polling place Fort Gibson, and requiring said board to canvass said returns from said precincts, and enumerate

the same along with the other election returns of said county, and enter same along with the other election returns of said county, and enter the result thereof, and cause the proper abstract to be forwarded of the vote on representatives, and cause to be,delivered unto the several candidates who received the highest votes for county and township offices the proper certificates thereof, or to show cause why the same has not been done, respectfully respond that the board of county commissioners of the proposed county of Muskogee had, prior to the service of said notice, canvassed the returns of the two precincts mentioned therein along with all other returns placed in their hands, and had determined the persons who had received the greatest number of votes in the county of Muskogee for the several county and township offices, and that such findings were reduced to writing, signed by the commissioners, and the work of said commissioners, under the law, was entirely completed, and said board of commissioners had adjourned, and did on the 29th day of October, 1907, adjourn *sine die*. Further responding they say that they have not delivered to the several candidates who received the greatest number of votes for the county and township offices any certificates, because they are not authorized by law so to do, such power being lodged exclusively in the county clerk.

"DE ROOS BAILEY and W. T. HUTCHINS,
"Attorney for Respondents.

"United States of America, Indian Territory, Western Judicial District—ss.:

"J. E. Wyand, being first duly sworn, says that the statements made in the foregoing response are true.

"J. E. WYAND.

"Subscribed and sworn to before me this 30th day of October, 1907.                    MINNIE P. DUMAS,
"[Seal.]                                     "Notary Public.
"My commission expires Jan. 16, 1911."

### Agreed Statement of Facts.

"It is agreed by J. E. Wyand, counsel for plaintiff, and George S. Ramsey, counsel for defendant, that this case may be heard and determined by the court upon the plaintiff's petition and defendant's response as the only pleading in the cause, the response being treated as a return to an alternative writ of mandamus. It is also agreed that respondent's answer be taken as

true on the statements and allegations of fact set up therein, and it is agreed that the exhibits attached to the answer are true and correct copies of the actual records they purport to be copies of. It is also agreed that the following is a correct copy of an order signed by J. E. Wyand and William Noel as county commissioners on October 30, 1907, and before their *sine die* adjournment, addressed to Porter Spaulding, which is in words and figures as follows:

" 'We, the undersigned 'commissioners of the proposed county of Muskogee, in the proposed state of Oklahoma, recognize Porter Spaulding as the county clerk of the said proposed county of the proposed state of Oklahoma, and hereby authorize him to issue certificates of election to the candidates receiving the highest number of votes, as found by the canvass made by us and completed on the 29th day of October, 1907, under the order of the judge of the United States Court of the Western District of the Indian Territory. And we further instruct him to deliver to all said candidates certificates of election, as provided by law, the votes to be determined by abstract made by us from said canvass.

" 'Given under our hands and seal this 30th day of October, 1907.

" '[Signed]                J. E. WYAND,          [Seal.]
                        " 'WM. NOEL.'

"It is agreed that after October 30th, and while the returns were still in the possession and custody of R. P. Harrison, clerk of the United States Court for the Western District at Muskogee, Indian Territory, the following order was made and signed by the court, to wit:

" 'It is hereby ordered that the clerk of this court do turn over to the county clerk of the provisional county commissioners of the proposed county of Muskogee, in the proposed state of Oklahoma, or Morgan Garaway, his deputy, the election returns of said county of the election held therein on the 17th day of September, A. D. 1907, now in his custody, for the purpose of the canvass, taking his special receipt therefor.

" 'Given this the 15th day of November, A. D. 1907, at Muskogee, Indian Territory.

" '[Signed]                WILLIAM R. LAWRENCE,
                        " 'Judge of Said Court.'

"The said Harrison, as said clerk, turned the returns over to Morgan Garaway, acting deputy clerk for Frank R. Applegate,

on November 5, 1907, and thereupon another canvass of the returns was made by Irvin Blanchard, one of the county commissioners, and by ———— Russell, holding appointment as county commissioner, to fill an alleged vacancy created by the alleged non-residence of Wm. Noel. It is agreed that the Republican candidates, Carroll S. Bucher, Fred Cook, and others, claim and counted that Noel was not legally a commissioner at the time the canvass was made, under which Porter Spaulding was ordered by the commissioners above set forth to issue certificates as shown by order heretofore set out. It is agreed that on the application of L. E. Smith, Republican candidate for register of deeds, the United States court did on October 29, 1907, make the following order to wit:

" 'In the United States Court for the Western District of the
          Indian Territory, at Muskogee.

" 'Carroll S. Bucher, Relator, v. J. E. Wyand et al., County Com-
          missioners et al., Defendants. No. 7,909. Notice.

" 'Whereas an affidavit has been filed in the above cause on behalf of the aforesaid relator showing that the board of county commissioners have unlawfully failed and refused to canvass the election returns from precinct No. two (2) of the township No. one (1), polling place Yahola, in the proposed county of Muskogee, of the proposed state of Oklahoma; also from precinct No. one (1) of township No. five (5), polling place at Fort Gibson, in said county:

" 'Now, therefore, you, the said J. E. Wyand, William Noel, and Irvin Blanchard, county commissioners as aforesaid, are hereby required to forthwith canvass the returns from the said precincts and enumerate the same along with the other election returns of said county and enter the result thereof, and cause the proper abstract to be forwarded of the vote on representatives, and cause to be delivered unto the several candidates who received the highest votes for county and township offices the proper certificates thereof, or that you show cause why you have not done so to the court sitting in Muskogee on the 30th day of October, A. D. 1907, at 9 o'clock a. m.

" 'Given this 29th day of October, A. D. 1907.
     " '[Signed]                   WILLIAM R. LAWRENCE,
                         " 'Judge of Said Court.
     " 'Attest:  R. P. HARRISON, Clerk, by W. E. MATTERN, Deputy.'

"It is agreed that Frank R. Applegate, as alleged county clerk under the appointment alleged to be made by Noel and Brady on October 9, 1907, never had possession of the election returns until November, 5, 1907. It is also agreed that on November 5, 1907, Carroll S. Bucher filed motion in the United States Court at Muskogee to vacate order of dismissal entered October 31, 1907; that affidavits were filed, motion heard, and denied by the court. We agree that this cause may be heard and determined on this statement of facts, plaintiff's petition, and respondent's answer as return, this November 29, 1907.

"J. E. WYAND,
"Counsel for Plaintiff.
"GEORGE S. RAMSEY,
"Counsel for Respondent.

"Filed November 29, 1907.

"W. H. L. CAMPBELL, Clerk Supreme Court.

"It is agreed that the result of this case shall control and be judgment of this court in cases of *Remus B. Ramsey v. John H. King,* (reported in this volume, 93 Pac. 754) and that this statement of facts be considered in the Ramsey Case. It is also agreed that the response of John H. King in case of Charles H. Eberle (reported in this volume, 93 Pac. 748) be and the same is admitted to be true in fact, that is, facts alleged in that answer are true, and that said case of Charles H. Eberle be submitted on this statement of facts, complaint, and answer as whole record, the answer to be treated as a return to an alternative writ.

"J. E. WYAND, Counsel for Plaintiff
"GEO. S. RAMSEY, Atty. for Defendant."

In addition to the pleadings and agreed statement of facts the court takes notice that by the election ordinance providing for the election of state, district, county, and township officers Porter Spaulding was appointed county clerk for the county of Muskogee.

*J. E. Wyand, Thomas H. Owen* and *Baker & Pursel,* for relator.

*Geo. S. Ramsey,* for respondent.

KANE, J. (after stating the facts as above). Section 2, art. 7, of the Constitution, provides that: "The original jurisdiction

of the Supreme Court shall extend to a general superintending control over all inferior courts, and all commissions and boards created by the law. The Supreme Court shall have power to issue writs of habeas corpus, mandamus, quo warranto, certiorari, prohibition and such other remedial writs as may be provided by law, and to hear and determine the same." This provision practically places the Supreme Court in the same relation to the inferior courts of the state as the court of King's Bench bore to the inferior courts of England, under the common law. Chief Justice Marshall in an early case (*Ex parte Crane et al.*, 5 Pet. [U. S.] 190, 8 L. Ed. 92), discussing the supervisory powers of the Supreme Court of the United States over the proceedings of the inferior courts by the writ of mandamus according to the principles of the common law, said:

"In England the writ of mandamus is defined to be a command issued in the King's name from the court of King's Bench and directed to any person, corporation, or inferior court of judicature within the King's dominion, requiring them to do some particular thing therin specified which appertains to their office or duty, and which the court of King's Bench has previously determined, or at least supposes, to be consonant of the right and justice. Blackstone adds that: 'It issues to the judges of any inferior courts, commanding them to do justice according to the powers of their office whenever the same is delayed. For it is the peculiar business of the court of King's Bench to superintend all other inferior tribunals, and therein to enforce the due exercise of those judicial or ministerial powers with which the Crown or Legislature have invested them, and this, not only by restraining their excesses, but also by quickening their negligence and obviating their denial of justice.'"

The Supreme Court of New York, in *Sikes v. Ransom*, 6 Johns. 279, discussing the power of the Supreme Court of that state to compel judges of the court of Common Pleas to amend a bill of exceptions according to the truth of the case, uses the following language:

"Why cannot the writ of mandamus issue from this court? We have the general superintendence of all inferior courts, and

are bound to enforce obedience to the statutes, and to oblige subordinate courts and magistrates to do those legal acts which it is their duty to do."

At common law the writ of mandamus is a writ of right every day made use of to oblige inferior courts to do justice, but it will not be made use of to control the exercise of discretion. In general, it lies where one has refused to be admitted or turned out wrongfully from any office or franchise. *People v. Superior Court*, 5 Wend. (N. Y.) 126; *Commercial Bank v. Canal Commissioners of New York*, 10 Wend. (N. Y.) 29, 3 Burr. 1266. The clerk of the district court is an officer of the court, and in order to properly perform the duties devolving on him by law it is the duty of the judge of the court to recognize him as such officer.

In the case at bar the respondent states in his return that he did not pass judicially upon the certificates of election presented to him by the relator, or Carroll S. Bucher, giving as his excuse therefor that by reason of the claim of Carroll S. Bucher to the same office, the respondent could not pass upon the claim of either party without passing upon the title to the office. So the question of interference with judicial discretion is not in this case, as I view it. This case is quite distinguishable from *In re Parsons et al.*, 150 U. S. 150, 14 Sup. Ct. 50, 37 L. Ed. 1034. It will be seen by the statement of Mr. Chief Justice Fuller in the Parsons Case that the court below "considered in connection with the evidence introduced by the respondent, the commission of O'Neal under which he had duly qualified, which was exhibited to the court on the 19th of June, 1893, when he was recognized as United States Attorney. This commission bore date May 26, 1893, and appointed O'Neal the attorney for the United States for the Northern District of Alabama, in due form." After hearing all the evidence offered by the parties the court entered its judgment in due form. In the case at bar the respondent states in his return that he did not take into consideration any of the evidence or certificates offered by the various claimants, and did not pass

judicially on the claim of the relator, or Carroll S. Bucher. The following is taken from the response of the repondent:

"Your respondent states that he was then of the opinion and is now of the opinion that he had no power to judicially determine who the rightful claimants to any of the said county offices were and are. Your respondent states that the Republican candidates for county offices had each a certificate of election, and the Democratic candidates for county offices had each a certificate of election and, not desiring to appear partisan in his action, this respondent made an order recognizing two Republicans claimants and two Democratic claimants."

The respondent was in error in refusing to consider the evidence offered by relator to support his claim. The office of clerk of the district court, under the law is to be filled by election, and the respondent had no authority to fill the office by appointment. One of the persons voted for at the election was entitled to the office, and that one was the person holding the *prima facie* title to the office. When the respondent refused to recognize the person holding *prima facie* title, mandamus was the proper remedy to compel such recognition.

The Supreme Court of Oklahoma, in *Cameron v. Parker*, 2 Okla. 277, 38 Pac. 14, laid down this rule:

"In an elective office the law requires that the credentials of the person declared duly elected shall be a certificate of election, or, in an appointive one, as in the case at bar, a commission from the Governor. This is the highest evidence of title the law requires, and it is not for an individual to assert the invalidity of the law authorizing it, the want of authority for its issuance, or the legal exercise of the power conferring it. These are questions for the courts to determine. But in the meantime the person holding the commission or certificate of election, legal upon its face, evidencing the absolute *prima facie* title to the office, is entitled to the possession of the books, records, and official belongings thereto, notwithstanding the actual title may be in controversy at the time, and in the same or another tribunal."

This case has a good many of the features of the case at bar. It is true that in the Cameron Case the writ ran against Parker,

the adverse claimant to the office, but in the case at bar the respondent makes the certificate of Carroll S. Bucher part of his response. So both certificates, and all the facts on which respondent bases his refusal to act, are before the court, as were the certificates and facts upon which the -parties based their respective titles in the Cameron Case. In that case the court went far enough into the claim of each of the parties to determine which held the *prima facie* title to the office, not for the purpose of trying the title to the office, for this it is well settled may not be done in a mandamus proceeding. *Quo warranto* is the proper method of determining disputed questions of title to public office, yet a mere groundless assumption of an election on the part of a person claiming title to public office, and the apparent exercise of the functions of the office *de facto*, will not deter the court, as a preliminary question, from examining the uncontroverted facts before it for the purpose of determining who has *prima facie* title, notwithstanding the person claiming adverse title may not be a party to the proceeding.

On this point the case of *Delgado v. Chavez*, 140 U. S. 586, 11 Sup. Ct. 874, 35 L. Ed. 578, is strongly in point. The facts in the Delgado Case, as stated by Justice Brewer, are as follows:

"On the 13th of January, 1891, Abraham Staab, William Nesbitt, and Juan Garcia filed in the district court of the First judicial district of the territory of New Mexico, and presented to the Judge thereof, their petition showing, as they claimed, that they had been elected at the general election in November preceding members of the board of county ty commissioners of Santa Fe county, in the territory of New Mexico; and further alleged that on the 2d day of January, 1891, they had duly qualified as such commissioners; that at the same election Pedro Delgado had been duly elected probate clerk of said county, and had qualified as such officer; that by virtue thereof he became and .was the acting clerk of the board of county commissioners, and had possession of the records, books, files, and papers of that office; that after their qualifications as such board they demanded of him to produce the books and to record their proceedings as such board; and that he refused so to do, or to in any manner recognize them as the board of county commissioners.

They prayed that a writ of mandamus might issue commanding him to recognize them as the board of county commissioners, that he act with them as such board, and that he enter of record their proceedings as a board. Upon this petition an alternative writ was issued; and on the 15th day of January, in obedience to such writ, appellant appeared and filed his answer, alleging facts, which, as he claimed, showed that three other persons were at the November election elected county commissioners, and that the petitioners' were not, and further averring that two of those other persons on the 1st of January, 1891, duly qualified as members of the board of county commissioners, entered into possession and assumed the duties of such office, met on that day in the courthouse of the county as the board of county commissioners, and proceeded to transact the business of the county, and that they were still in possession of their offices of county commissioners. He admitted that he refused to recognize the petitioners as a board of county commissioners, and alleged as his reason therefor that they were not the legally elected commissioners, and had never been in possession of such offices. On the same day, January 15th, the matter came on to be heard on these pleadings, and a peremptory mandamus was ordered commanding the appellant that he record on the records of the county the proceedings of the petitioners as the board of county commissioners of the county, and that in all things he recognize them as the only lawful county commissioners of the county."

After noticing other questions involved in the case, Justice Brewer continues:

"This brings us to the principal question in the case; and that is, the real import of the proceedings was to try the title to office, that *quo warranto* is a plain, speedy, and adequate, as well as the recognized, remedy for trying the title to office, and that the familiar law in respect to mandamus, reinforced by statutory provisions in New Mexico, is that mandamus shall not issue in any case where there is a plain, speedy, and adequate remedy at law. On this the invalidity of the proceedings is asserted. But the obvious reply is that this was not a proceeding to try the title of office. The direct purpose and object was to compel the defendant to discharge his duties as clerk, and to forbid him to assume to determine any contest between rival commissioners. It was enough in this case for the court to determine, and it must be assumed, that the evi-

dence placed before it was sufficient to authorize an adjudication that these petitioners were commissioners *de facto*. As such. the clerk is bound to obey their commands and record their proceedings. It is true the pleadings disclose the existence of a contest between these petitioners and other parties, and it is true that the answer would tend to show that the others were the commissioners *de facto;* but that was a question of fact to be determined by the court hearing this application, and it, as must be assumed from the decision, found that these petitioners, rather than their contestants, were the commissioners *de facto* It was proper for it, then, to issue a mandamus to compel the defendant to recognize them as the commissioners of the county, and this irrespective of the question whether or not the petitioners were commissioners *de iure*. No one would for a moment contend that this adjudication could be pleaded as an estoppel in *quo warranto* proceedings between the several contestants. If that has not already been determined in a suit to which all the contestants are parties, it is still a matter open for judicial inquiry and determination."

The foregoing case undoubtedly sustains the doctrine that, where two persons claiming title to the office of clerk of the district court present their credentials on which they base their claim to the office to the judge of the district court, and each requests the judge to recognize him as such clerk, it is the duty of the judge to examine such credentials for the purpose of determining which one of the claimants holds the *prima facie* title to the office, and such examination does not constitute passing upon the title to the public office.

Having reached the conclusion that the court has the power to examine all the facts presented by the parties for the purpose of determining which of the claimants has *prima facie* title to the office, we will briefly set out the claim of each as gleaned from the response and agreed statement of facts: The relator has a certificate signed by Porter Spaulding, who was appointed county clerk by the election ordinance passed by the constitutional convention. This certificate was based on a canvass of the vote cast, made by J. E. Wyand, J. W. Brady, and William Noel, who, all parties seem to concede, were the legal county com-

missioners of Muskogee county; and the canvass was made in pur-
suance to a writ of madamus issued out of the United States Court
of the Western Judicial District of the Indian Territory, at Mus-
kogee. It also appears, by the pleadings and agreed statement of
facts, that after the canvass was made as above stated, to wit, on
the 30th day of October, 1907, J. E. Wyand and William Noel, two
of the county commissioners, entered an order recognizing Porter
Spaulding as county clerk, and specifically ordering him as county
clerk to issue certificates of election to the candidates receiving the
highest number of votes. After this, on the same day, to wit, the
30th day of October, 1907, this board of county commissioners ad-
journed *sine die*. Carroll S. Bucher, according to the response and
agreed statement of facts, holds a certificate of election signed by
Frank R. Applegate, who claims to have been appointed by J. W.
Brady and William Noel, two of the members of the board of
county commissioners, after they had, as they stated, removed
Porter Spaulding from office, for the reason that Spaulding refus-
ed to turn over to them or expose the returns for canvass. These
commissioners claim to derive their power to remove Mr. Spaulding
and appoint Mr. Applsegate from section 16 of the election ordi-
nance, which reads as follows:

"In the event any county clerk shall fail or refuse to perform
or discharge any of the duties aforesaid, or be disqualified, the
county commissioners shall appoint some one to act as county clerk
in the performance of such duties."

The election certificate issued by Mr. Applegate is based upon
a canvass "made by Irvin Blanchard, one of the county com-
missioners, and ———Russell, holding appointment as county
commissioner to fill an alleged vacancy, created by the alleged non-
residence of William Noel." This canvass seems to have been
made on the 5th day of November, 1907.

The only irregularity apparent in the certificate of the re-
lator is that it was signed by Mr. Spaulding after his alleged re-
moval by the two commissioners above named. I am of the opinion
that section 16 of the election ordinance does not give the coun-

-ty commissioners power summarily to remove the county clerk for the reasons stated; but, as disclosed by the response and agreed statement of facts, as the same board of county commissioners, after the order of removal was made, and after the vote was canvassed, recognized Mr. Spaulding as county clerk, and specifically authorized and directed him to issue the certificates of election, and under this authorization and direction he did issue them, I do not deem it necessary to enter into a lengthy discussion of the powers of the commissioners to remove the county clerk. It is enough to say that, in my opinion, under the circumstances of this case, Mr. Spaulding, as county clerk, had authority to issue the certificate of election to the relator in this case, and its possession by the relator is *prima facie* evidence of his title to the office.

A careful scrutiny of the response and the agreed statement of facts fails to show the authority under which the alleged commissioners, who made the canvass on which Mr. Bucher's certificate of election was presumably based, acted when they made their recount of the vote. It was not only judicially determined that the board that made the canvass on which the relator's certificate of election was based was the legally constituted board of county commissioners, but all the parties recognized them as such. There cannot be two legally constituted boards at the same time, each authorized to canvass the returns and order certificates of election isued. From the response and statement of facts there can be but one conclusion drawn on this point, and that is that the board that canvassed the returns on which the relator's certificate of election is based was the legally constituted board. But, admitting that the board that canvassed the vote upon which Mr. Bucher's certificate of election was based was the legally constituted board, still there appears to be no reason why there should be a recanvass of the vote. The old board made their canvass in pursuance to a writ of madamus directing them to do so. Unless the facts disclose circumstances jutifying another canvass, and in this case they do not, the canvass so made would be illegal and void.

From the facts before the court it must be found that the

relator has a *prima facie* title to the office; that the certificate of election of Carroll S. Bucher is palpably without legal warrant, and absolutely void.

"Title to public office, based upon mistakes of fact or misconceptions of law, may impart a color or right which will bar the allowance of a mandamus; but palpable disregard of law renders the action whereby an office is seized merely colorable, and in a clear case will be brushed aside as affording no obstruction to the exercise of a plain legal duty." (*State of New Jersey v. Mayor*, 52 N. J. Law, 332, 19 Atl. 780, 8 L. R. A. 697.)

This is also a rule at common law. Thus in *Rex v. Bankes*, 3 Burr. 1452, Lord Mansfield proposed, upon the argument, that affidavits be laid before him that he might determine whether it was a doubtful election and fit to be tried upon an information in the nature of a *quo warranto*, or whether it was merely colorable, and clearly void; saying that in the former case the court might not grant a mandamus, while in the latter case they ought. This case falling fully within the rule sanctioned by the common law, and well supported by decisions of courts of last resort, both state and federal, and this court having all the facts before it should render effective relief. This proceeding does not in any way affect the title to the office; but the person having *prima facie* title to it is entitled to recognition as clerk of the district court by the respondent as judge of the court until his title is upset by a proper proceeding.

The relator is entitled to a peremptory writ of mandamus commanding the respondent, as judge of the district court of Muskogee county, to recognize the relator as clerk of the district court of Muskogee county and to permit said relator to record such proceedings of said court as it is the duty of the clerk to record, and to do and perform such other services as are required by law of the clerk of the district court and to turn over to the relator such books, records, papers, files, seals, and other property belonging to said office as may be in his possession. It is so ordered.

All the Justices concur.