IN THE MATTER OF THE APPLICATION OF THE HUDSON COUNTY BOARD OF TAXATION CONSISTING OF LEO ROSENBLUM, JOHN F. WILKENS, PAUL E. DOHERTY, MICHAEL V. DONOVAN AND AUGUST ZIEGENER, FOR A WRIT OR WRITS OF MANDAMUS.

Argued July 28, 1942—Decided August 4, 1942.

For the rule, *John Warren.*

*Contra, J. Emil Walscheid.*

BODINE, J. (At chambers.) On Tuesday, July 28th, 1942, there was presented to me, sitting as a single justice, a petition signed by "John Warren, Special Assistant Attorney-General of the State of New Jersey, attorney for Hudson County Board of Taxation consisting of Leo Rosenblum, John F. Wilkens, Paul E. Doherty, Michael V. Donovan and August Ziegener, Petitioners," praying that a peremptory writ of *mandamus* may issue out of this court, directed to J. Emil Walscheid, Harry W. Vanderbach, The Board of Chosen Freeholders of the County of Hudson, Patrick Dolan, Joseph Neary, Patrick Monahan, Alexander D. Sullivan, Harry E. Bischoff and George Scheetz, commanding them, or any, or all of them, to turn over and deliver to the petitioner all of the official files, books, records, papers, documents and seal of the Hudson County Board of Taxation, together with any and all other property belonging to or devoted to the use of the said Hudson

County Board of Taxation, and further commanding any or all of them to turn over to and make available for the use of the petitioner, the permanent offices of the Hudson County Board of taxation in the Hudson County Court House of Jersey City.

The petitioner recites that "on July 23d, 1942, Governor Edison had dismissed all of the then members of the Hudson County Board of Taxation. The members so dismissed were Patrick A. Monahan, Alexander D. Sullivan, Harry E. Bischoff and George Scheetz. That on July 23d, 1942, the Governor of New Jersey appointed Leo Rosenblum, John F. Wilkens, Paul E. Doherty, Michael V. Donovan and August Ziegener as members of the Hudson County Board of Taxation and forwarded their appointments to the Senate of the State of New Jersey, which on said day confirmed same, and on the same day commissions were issued under the Great Seal of the State to each of said appointees, so commissioning them as members of the Hudson County Board of Taxation.

"On July 24th, 1942, each of said appointees took and subscribed his oath that he would faithfully perform the duties of his office as a member of the Hudson County Board of Taxation, and at the same time took and subscribed his oath of allegiance as required by law, which oaths were administered by, and subscribed before, the Honorable James R. Erwin, Judge of the Hudson County Court of Common Pleas; said oaths were immediately thereafter filed in the office of the Secretary of the State of New Jersey.

"After the said members of the Hudson County Board of Taxation took and subscribed their oaths as aforesaid, they proceeded to the permanent offices of the Hudson County Board of Taxation provided for it by the Board of Chosen Freeholders of Hudson County, and their entrance to said offices was barred by Patrick Dolan, Chief of the Hudson County Police, Joseph Neary, Inspector of the Hudson County Police, and two officers of said police force, who physically barred the way of all the members of the said board and prevented them from entering their offices, which action Patrick Dolan, Chief of said Police, stated was on orders of J. Emil Walscheid, County Counsel of the County of Hudson,

who was then and there present and directing the said police officials. Mr. Walscheid then told the members of the Hudson County Board of Taxation that he did not, and would not, recognize them as members or permit them at any time to enter the offices of the said Board."

The petition further recites that records were removed from the offices of the Tax Board and placed in a vault in the freeholders' office. The secretary of the Hudson County Board of Taxation would not attend their organization meeting, so that thereafter August Ziegener was elected secretary *pro tem,* and Leo Rosenblum as permanent president. "That John Warren, Special Assistant Attorney-General of the State of New Jersey, designated as such to represent the Hudson County Board of Taxation, went to the Hudson County Court House and there learned from two clerks of the Hudson County Board of Taxation that Harry W. Vanderbach, the secretary, was in the offices of the Hudson County Board of Taxation. They went to the entrance of the offices of the Hudson County Board of Taxation and their entrance thereto was physically barred by Inspector Joseph Neary of the Hudson County Police and two members of the said police force.

"Many appeals have been filed by taxpayers of the County of Hudson and many more will be filed, and it is anticipated that approximately 14,000 appeals from 1942 assessments will be filed. The last day for filing such appeals expires on August 15th (*R. S.* 54:3-21). A filing fee of $1 is required where the assessed valuation of the property involved in the appeal is over $5,000 (*R. S.* 54:3-21.1). The Hudson County Board of Taxation must make orders respecting the time and manner for hearing the appeals and hear and determine them and revise and correct the assessments in accordance with the true value of the taxable property (*R. S.* 54:3-22), and hear and determine all such appeals within three months after the last day for filing such appeals (*R. S.* 54:3-26), which time so limited expires on November 15th, 1942, and must enter upon the tax duplicate proper assessments of any property omitted by the assessor and give notice thereof of the time and place of the next meeting to the owner of the

property affected and furnish a copy of the entry to the clerk or collector of the taxing district, but such proceedings must be brought within one year from the date when taxes on real property become lien (*R. S.* 54:3-20), which is December 1st in each year (*R. S.* 54:5-6).

"The Hudson County Board of Taxation is without knowledge as to who is receiving the said filing fees and is unable to make the orders and conduct the hearings of appeals required by law or, without the records of the 1941 and 1942 assessments, ascertain what property has not been assessed and to assess the same and to otherwise perform the duties required by the statutes and constitution of the State of New Jersey."

At the same time there was offered in evidence a certified copy of the opinion and order of Governor Edison removing the old members of the County Board of Taxation.

So far as pertinent the opinion was as follows: "This proceeding was instituted before me on March 6th, 1942, by the City Affairs of Jersey City (hereafter referred to as 'the Committee') for the removal of the individual members of the County Board of Taxation of Hudson County (hereafter referred to as 'respondents') pursuant to *R. S.* 54:3-28. Mr. Rotherham, one of the individual respondents, having died since the institution of the proceedings, I am concerned only with the remaining four members of the Board.

"*R. S.* 54:3-28 is as follows: 'A member of a county board of taxation who shall willfully or intentionally fail, neglect or refuse to comply with the constitution or laws of this state relating to the assessment and collection of taxes, or to perform a duty prescribed by this title, may, after a proper hearing, be dismissed by the governor, and his office declared vacant. The governor may thereupon appoint his successor in accordance with the provisions of this chapter.'

"In its petition dated March 6th, 1942, the Committee requested that the individual respondents be dismissed from office on the ground that they have willfully and intentionally failed, neglected and refused to comply with the constitution and laws of this state relating to the collection and assessment of taxes, and to perform the duties prescribed by Title

54 of the Revised Statutes. Eighteen specifications of the alleged neglect and refusal of the individual respondents to act in acordance with law are set forth in the petition. A copy of the petition was served upon each of the respondents on April 7th, 1942, and they entered appearances in the proceeding on April 17th, 1942, by counsel, namely, J. Emil Walscheid, County Counsel for Hudson County, and filed an answer in which they all joined. On May 8th, 1942, notice of a hearing to be held before me on June 1st, 1942, in the City of Trenton was given to each of the respondents.

"On May 18th, 1942, the respondents applied to the Supreme Court of the State of New Jersey for a writ of *certiorari* to review the charges filed with me, but their application was denied by Mr. Justice Porter on May 26th, 1942. *Bischoff* v. *Edison,* 128 *N. J. L.* 413.

"Hearings on the petition and answer were thereafter held before me and testimony taken on June 1st, 2d, 3d, 8th and 10th, 1942, pursuant to the notice thereof given as above stated. At the opening of the hearing on June 1st, counsel for the respondents stated that all of the respondents desired to and did withdraw from the proceeding and did not intend to appear in response to the notice of hearing or to offer any evidence. The respondents did not thereafter make any appearances in the proceeding nor did those who were subpœnaed obey the subpœnas issued by me.

"Peter P. Artaserso, an Assistant Corporation Counsel of Jersey City, also acting in behalf of the respondents, filed a similar withdrawal on their behalf and Charles A. Rooney, Corporation Counsel of Jersey City, appeared and objected to the hearing of the charges by me as Governor.

"The respondents, through their counsel, based their objections to the proceeding upon four grounds, the first of which was that the statute (*R. S.* 54:3-28) is unconstitutional in that the legislature has no power to confer upon the Governor the right and duty to remove a State officer for the reasons therein stated because such reasons constitute a crime triable only by the courts. I do not find merit in this contention. The Constitution of New Jersey in Article V, section 6, imposes upon me the duty of seeing that the laws of the

State be faithfully executed. In view of this mandate of the Constitution, I believe that I must enforce the laws as I find them and must regard them as valid until otherwise adjudicated. The constitutionality of a similar statute (*Pamph. L.* 1911, *p.* 374) was upheld by the Court of Errors and Appeals in *McCran* v. *Gaul*, 96 *N. J. L.* 165.

"The second ground of objection to the proceeding urged by respondents is that the statute under which the charges were filed is invalid because the respondents cannot be removed pursuant to its authority but only by the Senate sitting as a Court for the Trial of Impeachments. I am advised that a similar contention was made and overruled in *McCran* v. *Gaul*. The legislature there had conferred upon the Governor the power to remove the members of the Board of Public Utility Commissioners, which he exercised after hearing on charges preferred by the City of Jersey City. The Governor's power to do so was upheld both by the Supreme Court and by the Court of Errors and Appeals, *McCran* v. *Gaul*, 95 *N. J. L.* 393; *affirmed*, 96 *N. J. L.* 165.

"The third ground of respondents' objection to the proceedings is that the charges do not sufficiently apprise the individual respondents of the acts or omissions which are claimed to constitute their misconduct. I believe and so hold that the charges reasonably apprise the individual respondents of the accusations which are made against them and are sufficiently detailed to enable them to prepare and present such defense as they may wish. Moreover, I stated at the first hearing that respondents would be afforded ample opportunity, after the presentation of Committee's evidence had been concluded, to answer the charges as amplified by the proof.

"The fourth ground of respondent's objection to the proceeding was in effect that I was biased and prejudiced against them and, therefore, disqualified from acting. They asked me to refer the Committee's charges for hearing and decision to two judges, specifying that their terms must not expire during my term. I refused this request. The reasons stated in open hearing, upon which respondents based their claim of bias were scurrilous and insulting and without the slightest

foundation in fact and were totally untrue. I will only say, with respect to this ground, that it is totally without merit, and is, therefore, overruled."

A contest as to who holds a public office is determinable only in a *quo warranto* proceeding. In fact, that is the only way in which a judgment of ouster can be entered. The question for solution in this case, however, is: May the court by a peremptory writ of *mandamus* aid officers, who hold a commission issued in the manner stated, so that they may perform their public duties? I find it may. I settle no question of title to office. But the writ of *mandamus* should go as a judgment in aid of the duly commissioned officers of the state. A *prima facie* title has been shown. Allegiance of the employees of the board run to those duly qualified under the circumstances recited. Even though the Governor needs no aid to enforce his removal of the old board and the installation of the new board, still the judgment of this court is necessary if orderly processes of law are to continue.

Clearly, the court has the power to compel the clerk of the board to recognize the authority of those who hold the state's warrant of office. In a proper contest, if one is ever instituted, the question of title may be settled in the proper manner. In the meantime, the board appointed by Governor Edison should function, rather than the board removed by him, pursuant to the statute and the facts and law recited in his opinion. *In re Delgado, Petitioner,* 140 *U. S.* 586, 590.

In that case, Mr. Justice Brewer said: "No one would for a moment contend that this adjudication could be pleaded as an estoppel in *quo warranto* proceedings between the several contestants. If that has not already been determined in a suit to which all the contestants are parties, it is still a matter open for judicial inquiry and determination. Who would doubt, if these petitioners were the unquestioned commissioners of the county that *mandamus* would lie to compel the clerk to recognize them, and record on the county books their proceedings as such? Does the fact that certain parties are contesting their rights as commissioners oust the court of jurisdiction, or forbid it to compel other county officers to recognize them? Must the office of county commissioners

remain practically vacant, and the affairs of the county unadministered, pending a trial of a right of office between contestants? Surely not; public interests forbid. They require that the office should be filled; and that when filled by parties under color of right, all other officers should recognize them as commissioners until their right to hold the office has been judicially determined adversely by proper *quo warranto* proceedings."

The title shown in this case is not subject to rejection by the clerks of the board and others, whatever the outcome may be in a *quo warranto* proceeding. The commission entitles the holder thereof to obedience from those employed by the board. The offices are not full against the relators unless they elect to consider themselves out. *Leeds* v. *Atlantic City*, 52 *N. J. L.* 332.

"It is apparent from the drastic and extraordinary character of the writ of *mandamus* that courts act with caution in respect to it and award it only in cases where it clearly appears that under the law it ought to issue. The right and the duty must be clear; for the writ will not be granted in a doubtful case, and especially not where, if granted, it would not be effectual." 34 *Am. Jur.* 831, § 36.

But the present case seems not doubtful in the legal sense. Everything is subject to change, but still the case of *McCran* v. *Gaul*, 95 *N. J. L.* 393; *affirmed*, 96 *Id.* 165, sustains the power of the Governor to remove certain officers found by him to be unfit and to appoint their successors.

Mr. Justice Scudder said in *State, ex rel Kelly* v. *Mayor, &c., of Paterson*, 35 *N. J. L.* 196 (at *p.* 199) : "He has been refused admission to a public office, and if he have no other specific legal remedy, and his right is clear, he is entitled to a writ of *mandamus*. There can be no question that the law affords him no other sufficient redress, and this must be his appropriate remedy. But in what form shall it issue? The application is for a peremptory *mandamus* in the first instance. This is not the usual course of proceeding, for the writ, ordinarily, is first used in the alternative. The object is to give the opposing party the benefit of a return, and a full hearing on the merits, before a judgment is pronounced,

which shall be peremptorily executed. In this case, both parties have been heard, every fact has been fully presented, and the law discussed. The facts are all admitted, as they are shown by the affidavits of the relators. On application for a *mandamus,* where both parties are heard, and there is no dispute about the facts, and the law is with the application, a peremptory *mandamus* may be granted in the first instance. *Ex parte Rogers,* 7 *Cow.* 526; *Commissioners of Knox Co.* v. *Aspinwall,* 24 *How.* 376; *People* v. *Contracting Board,* 27 *N. Y.* 378, 386; *State* v. *Rahway,* 4 *Vr.* 110, 111; *State* v. *Elkinton,* 1 *Id.* 335; *Moses on Mandamus* 222."

The case of *State, Kelly* v. *Paterson, supra,* was followed by Mr. Justices Swayze, Trenchard and Minturn in *American La France Engine Co.* v. *Seymour,* 79 *N. J. L.* 92, and by Mr. Justices Trenchard, Heher and Perskie in *Hudson County National Bank* v. *Bayonne,* 113 *Id.* 258, and by Mr. Justice Perskie in *Asbury Park* v. *Smock,* 121 *Id.* 487; *Borough of Fort Lee* v. *United States,* 104 *Fed. Rep.* (2d) 275, 290.

"In most jurisdictions, the peremptory writ may be granted in the first instance, without first issuing an alternative writ, where due notice has been given, no fact questions are in dispute, and a clear case for such relief is presented." 116 *A. L. R.* 663.

The facts in the present case are not subject to material dispute. There was a full hearing for the best part of a day and ample opportunity for the argument of the questions raised. Both sides have submitted briefs which have been carefully considered.

Judge Reed said in the case of *O'Donnel* v. *Dusman,* 39 *N. J. L.* 677: "The question presented is, whether this court will send its writ of *mandamus* to Dusman, commanding him to deliver these papers and books to the relator, who claims the right of possession by virtue of his appointment by the committee who claim to have been elected. The use of the writ of *mandamus* for the compulsory transfer of the books, records and appurtenances of an office to the person showing a title to it, is of early origin. *Rex* v. *Owen,* 5 *Mod.* 314; *Rex* v. *Clapham,* 1 *Wils.* 305; *Tapping on Mandamus* 99.

\* \* \* The use of this writ for the purpose of placing in the hands of the officer all the appliances essential to the conduct of the office, in accordance with his duty toward the public, is established in this country by numerous cases. *High on Ex. Leg. Rem.*, §§ 74, 76. \* \* \* A number of objections were urged against the allowance of this writ, as being within some of those rules which restrict its use. The most forcible objection urged is, that this proceeding is intended as a method of determining the title of two claimants of the office of treasurer of the township of Weehawken. It is said that the question of the allowance or disallowance of this writ involves the question of the legal constitution of the rival township committees, through which, respectively, these officers claim their appointments. The rule stated by Mr. High is, 'If it be apparent to the court that instead of a proceeding whose object is only to get possession of the books and insignia of the office, the writ is invoked, in reality, to test the title to the office, and that the question of title is the real point in issue, it will refuse to lend its aid by *mandamus*.' \* \* \* Many circumstances may control the court in exercising its discretion, but it is clear that where the relator shows a title, *prima facie* or otherwise, the mere fact that there is another person claiming the same office will not operate, in itself, to prevent an allowance of the writ."

It is apparent that the mere assertion, that those who hold their commission should not have received it, is no reason to withhold the writ. They were appointed by the Governor, confirmed by the Senate, and duly commissioned and sworn. Such facts create a *prima facie* title good against the mere assertions of others.

The facts in the case of *Pangborn et al.* v. *Young*, 32 *N. J. L.* 29, were stated in the opinion as follows: "On the 23d March, 1866, the legislature passed an act entitled, 'an act to establish a police district in the county of Hudson, and to provide for the government thereof.' \* \* \* Under the new law, commissioners were appointed by the governor, with the advice and consent of the senate, and were vested with the powers and duties incident to, and connected with, the police government and discipline of the district. The

officers above named refused to recognize these commissioners, or act under their authority, upon the ground that the law, in virtue of which they were appointed, was invalid, never having been constitutionally passed. The treasurer refused to pay checks drawn on him by the commissioners; and the chief of police refused to deliver up to the board of commissioners the books, papers, and property belonging to the police department, as required by the act. The commissioners thereupon applied to this court for a writ of *mandamus,* to be issued against each of said parties so refusing as aforesaid, commanding him to comply with the requirements of the said commissioners." A writ of *mandamus* issued, the court determining that the claims of unconstitutionality of the statute were unsound. Such claims should not, by the mere assertion, defeat the action of the Executive.

"The writ of *mandamus* is issued to admit to office not only a person who claims a right by election or appointment, but also one who, having been admitted by election or appointment, has since been improperly removed. *High on Ex. Rem.,* §§ 67, 72; *Moses on Mand.* 129." *Clarke* v. *Trenton,* 49 *N. J. L.* 349, 355.

"The mere fact that the application for the writ incidentally involves the inquiry as to which of two claimants is entitled to enjoy the office for the time being will not necessarily prevent the allowance of the writ, where other remedies are inadequate, as this does not settle the title to the office in question. Also the *prima facie* right of a person holding a certificate of election or appointment to office to be placed in possession of it may be determined and enforced in a *mandamus* proceeding; but it is only the *prima facie* right that is determined, and the issuing of a *mandamus* to seat a person who produces the proper evidence of title does not settle the title at all." 38 *C. J.* 706.

"The use of the writ of *mandamus* for the compulsory transfer of the books, records, and appurtenances of an office to the person showing a title to it is of early origin, and the rule is well established that, while *mandamus* will not lie to compel respondent to turn over to the relator the books, papers, &c., pertaining to an office where the relator does not

show a *prima facie* title or where the proceeding would necessarily involve the trying of the title of the parties to the office, yet the writ will lie in favor of the holder of the *prima facie* title to an office after making the proper demand to recover the possession of the property and insignia of the office, including the books, records, papers, rooms, and buildings, against one holding over after the expiration of his term or lawfully removed." 38 *C. J.* 708.

"*Mandamus* is the proper remedy by which a person nominated by the chairman of the county committee for appointment as member of a precinct board of registry may compel the board of election to appoint him to the office." *Fort* v. *Howell,* 58 *N. J. L.* 541.

"As regards the evidence of his title which the relator must show who seeks the aid of *mandamus* to recover possession of official records and insignia, it is held that, having received a certificate of election and qualified in the manner provided by law, he is *prima facie* entitled to their possession and may enforce his rights by aid of the writ. And upon the application for *mandamus,* the court will not go behind the certificate of election and try the relator's actual title." *High on Ex. Leg. Rem. (3d ed.)* 87.

Chancellor Green said in *Layton* v. *State,* 28 *N. J. L.* 576: "The award of *mandamus* does not purport to adjudge or decide any right. It is rather in the nature of an award of execution than of a judgment. It is the mode of compelling the performance of an acknowledged duty, or enforcing an existing right, rather than deciding what that right or duty is. The award is no finality. It concludes nothing. If the writ is denied, the relator cannot have error, and if granted, the award could not be pleaded in bar. Like a *procedendo* or a prohibition it was a simple command to perform a duty."

"A *prima facie* right or title on the part of the relator to the office is all that is necessary, or in fact involved, in *mandamus* proceedings to compel the surrender of the insignia, &c., of the office. This is so for the reason that a *prima facie* title to a public office confers a right to exercise its functions, and a right to the possession of the insignia and

property thereof, and upon such *prima facie* title the court will compel the delivery of the insignia and property, in order that the functions and duties of the office may be exercised. And for this reason the judgment directing the defendant to surrender the office is not conclusive in subsequent proceedings to test the actual title to the office. On the other hand, a clear *prima facie* right to the office must be shown." 18 *R. C. L.,* § 188.

It is to be observed from the foregoing that where both parties are heard and there is no dispute about the facts and the law is with the application, a peremptory *mandamus* has usually been granted in the first instance. That the law is with the applicants admits of no doubt. They hold the state's warrant and the respondents have none since theirs was forfeited in a proceeding instituted under the statute, under which they held office, and in which they did not care to participate.

Under the *Mandamus* Act any justice of the court in a proper case may allow the writ. *N. J. S. A.* 2:83-2. Probably the older practice by rule and an early hearing before a branch court had some merit. However, since the exigency is great I have considered the matter with the aid of the exhaustive briefs furnished me.

Can those removed by the Governor in a proceeding under the statute claim that they are still lawfully in office? I do not think they can. They are not *de jure* officers. They were removed for cause and in a proceeding conducted according to law. That they may not have redress in some proceedings is not determined. The Governor's action, however, is challenged because it is said the statute was unconstitutional in that the offense for which they were removed was a misdemeanor at common law and under the statute *N. J. S. A.* 2:103-1. This argument overlooks the fact that the legislature so provided, *N. J. S. A.* 54:3-28.

There seems no reason in fact why a Board so removed should complain that they were not indicted by a grand jury. In the removal proceeding they were not charged as criminals, but as men unfit for public office. Quite a difference. Then counsel overlooks the fact that the legislature by appro-

priate action authorized the very steps taken by the Governor. Such legislative action has been taken by many different legislatures with the sanction of the courts. *McCran* v. *Gaul, supra.* The Governor, in his inquiry, was merely pursuing the command of the statute and was in no sense encroaching upon the ancient powers of the grand jury.

The Chancellor in the case of *In re New Jersey State Bar Association,* 114 *N. J. Eq.* 261, had no grant of power to remove state officers. The Governor, in the instant case, has that specific power.

If the respondents are without a court remedy under the *Quo Warranto* Act that is no reason why duly commissioned officers of the state should not proceed to perform their duties. Their rights seem clear. The old board is not in office except by force. They were removed in a proceeding authorized by the law.

Since there was a full hearing, it seems futile to argue that there should have been first a rule to show cause. The facts are not in dispute and the constitutional objection to the proceeding cannot be viewed seriously.

The writ will be allowed without prejudice to the respondents asserting their right to office, if they have any, in such way as they may be advised. I merely determine that those showing a *prima facie* right must have the aid of the court, and it is so ordered.